# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ALLEN GRANT SIMMONS,**

    Petitioner,

v.                                               **Civil Action No. 5:11cv181**
                                                         **Judge Bailey**

**KUMA DEBOO, Warden,**

    Respondent.

## REPORT AND RECOMMENDATION

### I. Procedural History

On December 16, 2011, the petitioner, Allen Grant Simmons, a federal prisoner, filed a *pro se* petition under the provisions of 28 U.S.C. §2241, challenging the computation of his federal sentence. Specifically, petitioner challenges the failure of the Bureau of Prison ("BOP") to include prior custody credit for time spent in state custody when computing his federal sentence. Along with his petition, petitioner paid the required filing fee.

On December 19, 2011, the Clerk issued a notice of deficiency, directing petitioner to provide his complaint on a court-approved form. On December 28, 2011, petitioner filed his required court-approved form complaint. On January 30, 2012, petitioner filed a motion to amend his petition, including within his motion the amended petition. By Order entered February 14, 2012, petitioner's motion to amend was granted.[1] That same day, the undersigned made a preliminary review of the file, determined that summary dismissal was not warranted, and directed the respondent to respond to the petition.

On March 13, 2012, the respondent filed her Motion to Dismiss or in the Alternative, for Summary Judgment, with a Memorandum in support. Because petitioner was proceeding *pro se,* on

---

[1] An amended Order granting petitioner's motion to amend was entered the following day. (Dkt.# 10).

March 14, 2012, a Roseboro[2] Notice was issued. On April 9, 2012, the petitioner filed a motion for an extension of time in which to reply, which was granted by Order entered on April 11, 2012. On May 7, 2012, the petitioner filed his "Petitioner's Objection to Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment, and Petitioner's Motion to Strike Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment."

This matter, which is before the undersigned for a Report and Recommendation pursuant to LR PL P 83.09, is ripe for review.

## II. Facts

On December 8, 2002, petitioner was arrested by Grant County, West Virginia law enforcement on charges of burglary, malicious assault, wanton endangerment, third offense domestic violence, breaking and entering an automobile and petit larceny. Three months later, on March 7, 2003, petitioner was borrowed from the state of West Virginia by the U.S. Marshals Service on a writ of *habeas corpus ad prosequendum* to answer for charges in the Northern District of West Virginia. On October 29, 2003, petitioner was sentenced in District Court in the Northern District of West Virginia to ninety-three months imprisonment for Possession of a Firearm by a Convicted Felon and as an Individual Convicted of a Misdemeanor Crime of Domestic Violence, in violation of 18 U.S.C. §§ 922(g)(1) and (2) and §924(a)(2). He was returned to the West Virginia state authorities following his federal sentencing. On April 15, 2004, he was sentenced by the state of West Virginia to a thirty-four year term of imprisonment on the state charges, with credit for all the time served from the date of his December 8, 2002 arrest, with his sentence to be served consecutive to the federal sentence already imposed.

---

[2] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a *pro se* plaintiff of his right to file material in response to a motion for summary judgment).

On December 17, 2008, petitioner completed his state sentence and was released on parole into the Bureau of Prisons ("BOP") custody to begin his federal sentence, pursuant to 18 U.S.C. §3585(b).

Petitioner did not file a direct appeal of his federal conviction, nor did he file a Motion to Vacate pursuant to 28 U.S.C. §2255.

The petitioner is presently incarcerated at FCI Gilmer in Glenville, West Virginia. He has a projected release date, on which he will have completed serving his federal sentence, of September 8, 2015. (Id.).

### III.  Issues Presented

**A.  The Petition**

Petitioner challenges the accuracy of the BOP's computation of his federal sentence, alleging that his federal sentence should have commenced on October 29, 2003, the date it was imposed, but that instead, the BOP failed to credit his federal sentence for his time spent in state custody after the federal sentence was imposed until he was released from state custody on December 17, 2008. He argues that he is entitled to *nunc pro tunc* designation relief because he was "forced to continue the service of his federal sentence in a State . . . institution." He asserts that the federal sentencing judge never intended that he serve consecutive sentences "as no other sentence existed at the time of judgment in this case" because he had not yet been sentenced on the state charges. Alternatively, he argues that either his federal prosecution should have been postponed until after his state prosecution was accomplished, or that the federal sentencing court "erred" by not sentencing him to a term concurrent with his state sentence, consistent with §5G1.3(b)(1)(2). He asserts that he has exhausted his administrative remedies with regard to his claim.

As relief, he requests that this Court grant his petition, direct the BOP to credit him with the time served in state custody and order his immediate release to the supervision of the District Court of Virginia, where he would like to relocate after he is released from prison.

**B. Motion to Dismiss or in the Alternative, for Summary Judgment**

In support of his Motion to Dismiss, the respondent argues that the petition should be dismissed because petitioner's federal sentence commenced on December 18, 2008; he is not entitled to prior custody credit, because any time spent in custody prior to the imposition of his federal sentence was already credited to his state sentence. Moreover, petitioner's claim that a *nunc pro tunc* designation should be apply has no merit; the BOP already considered and denied this request after determining it was not warranted. Petitioner's sentence is correctly calculated, and his challenge to the imposition of his sentence is both untimely and improper, because it should have been raised as a Motion to Vacate pursuant to 28 U.S.C. §2255.

**C. Petitioner's Response to Motion to Dismiss**

Petitioner generally reiterates his claims and attempts to refute the respondent's arguments on the same, expanding in detail, somewhat contradictorily, on his prior *nunc pro tunc* argument. He moves the Court to strike the respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment as a "prefabricated form response used by the government in this District to rubber stamp deny all petitions made by pro se petitioner's [sic] arguing Habeas Corpus[.]" He raises a new claim, that a "horrible manifest injustice" occurred when the District Court erred by "double-counting" unspecified enhancements to his sentence; contending that his adjusted guideline should have been 13, with a criminal history category of VI, giving him a Guideline range of 33-41 months "60 months less than that of the range used[.]" Finally he attaches as exhibits numerous certificates proving classes completed and rehabilitation efforts made while incarcerated.

As relief, he requests that the Court strike the respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment; direct that his case proceed on its merits; and consider running at least a portion of his sentence concurrent with the state sentence served, making him eligible for immediate release.

**IV. Standard of Review**

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. <u>Motion for Summary Judgment</u>**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## V. Analysis

In general, a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Nevertheless, in some cases, a federal sentence may begin prior to the date the Attorney General gains physical custody of the defendant. Title 18 U.S.C. Section 3621(b) gives the Bureau of Prisons the authority to "designate the place of [a] prisoner's imprisonment." Therefore, when a federal court orders its sentence to run concurrently[3] with a previously imposed state sentence, a *nunc pro tunc* designation can be made, whereby the Bureau of Prisons designates a state facility as the place for service of a federal sentence. See United States v. Evans, 159 F.3d 908, 911-12 (4th Cir. 1998)(a federal sentence may commence on a defendant who is already in state custody "if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence.").

However, the mere fact that state prisoner is in federal court pursuant to a federal writ of habeas corpus *ad prosequendum* does not mean that the prisoner's federal sentence has begun to run. "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." Id. at 912. See also Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992)("A prisoner is not even in custody for purposes of section 3568 when he appears in federal court pursuant to a writ *ad prosequendum*; he is merely 'on loan' to federal authorities.").

In the instant case, the federal court sentenced the petitioner on October 29, 2003. Although the judgment in the federal sentence was silent regarding any relationship to the pending state court action, and the state sentence was entered subsequent to the federal sentence, when the state sentence was imposed on April 15, 2004, it was given an effective date of December 8, 2002, the date

---

[3] Here, petitioner's state sentence was ordered to "run consecutive to, *or in addition to*, the sentence previously imposed by the Federal Court." (emphasis added) (Dkt.# 14-1 at 17).

7

petitioner was originally arrested on the state charges, to give petitioner credit for 494 days credit for time spent in state custody prior to the state sentence being imposed. The Attorney General, through the Federal Bureau of Prisons, is responsible for computing federal terms of imprisonment. See United States v. Wilson, 503 U.S. 329 (1992). In making this computation, the BOP must adhere to 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; **that has not been credited against another sentence.**

(emphasis added).

The United States Supreme Court has held that under 18 U.S.C. §3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson, *supra* at 337. Therefore, under 18 U.S.C. §3585(b), prior custody credit cannot be awarded if the prisoner has received credit towards another sentence. See U.S. v. Brown, 977 F.2d 574 (4th Cir. 1992)(Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences **unless it has been credited against another sentence**). (emphasis added); U.S. v. Goulden, 54 F.3d 774 (4th Cir. 1995)(credit is only available for time spent in custody which has not been credited against another sentence).

Here, the petitioner's state sentence, although not imposed until April 15, 2004, actually began on December 8, 2002 (Dkt.# 14-1 at 18) and ran continuously until he was paroled to a federal detainer on December 17, 2008, and released to the custody of the U.S. Marshals Service to begin his federal sentence. (Dkt.# 14-1 at 24). Therefore, the petitioner received credit against his state sentence for all the time he spent in custody prior to the federal sentence being imposed. Even though the federal sentence was imposed before the state sentence was imposed, the state sentence preceded the federal sentence because the state had primary custody and the effective date of its

sentence, although imposed second in time, preceded the date of the imposition of the federal sentence. Therefore, petitioner cannot receive any additional credit for time spent serving his state sentence before his federal sentence was imposed, because to do so would award impermissible double credit. Further, a review of the record reveals that when the petitioner first raised this issue administratively in 2009, the BOP contacted petitioner's sentencing judge, the late Honorable Robert E. Maxwell, who declined to grant petitioner's request for retroactive (concurrent) designation, because of petitioner's "very serious, extensive and violent history." (Dkt.# 14-1 at 27).

Petitioner's new argument, raised for the first time in his response to the respondent's Motion to Dismiss or, in the Alternative, for Summary Judgment, that the District Court erred in calculating his sentence by "double-counting" unspecified enhancements, giving him an adjusted guideline greater than he should otherwise have had, in addition to being an amendment to his complaint for which he did not seek leave of court, is insufficiently pled, because petitioner has not even identified what the objected-to enhancements are. Accordingly, this claim will not be addressed.

## VI. Recommendation

For the foregoing reasons, the undersigned recommends that the respondent's Motion to Dismiss or in the Alternative, for Summary Judgment (Dkt.# 13) be **GRANTED** and the petitioner's § 2241 petition be **DISMISSED with prejudice**. Further, the petitioner's Motion to Strike (Dkt.# 21) the respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment, should be **DENIED as moot**.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, **or by June 4, 2012**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of such objections should also be submitted to the United States District Court Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. §

636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Report and Recommendation to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: May 21, 2012

/s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE